UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

HARRY SWALES, ET AL.                                                    PLAINTIFFS

V.                                         CIVIL ACTION NO. 3:17-CV-490-DPJ-FKB

KLLM TRANSPORT                                                          DEFENDANT
SERVICES, LLC

CONSOLIDATED WITH

MARCUS BRENT JOWERS                                                       PLAINTIFF

V.                                         CIVIL ACTION NO. 3:17-CV-517-DPJ-FKB

KLLM TRANSPORT                                                          DEFENDANT
SERVICES, LLC

ORDER

These consolidated cases arising under the Fair Labor Standards Act ("FLSA") are before

the Court on Plaintiffs' Amended Motion for Conditional Certification [195].  For the following

reasons, the motion is granted, but the scope of the proposed collective action is narrowed.  This

ruling is certified for interlocutory appeal.

I.        Facts and Procedural History

        Defendant KLLM Transport Services, LLC, is "a motor carrier that is authorized by the

Federal Motor Carrier Safety Administration . . . to provide transportation of property for hire to

the public."  Def.'s Mem. [210] at 8.[1]  Plaintiffs Corey Lilly, Kyle Shettles, John McGee, and

Marcus Brent Jowers all worked as truck drivers for KLLM under Independent Contractor

---

[1] All references to page numbers in the parties' briefs are to the CM/ECF pagination.

Agreements ("ICAs") between October 2015 and January 2017.[2]  Plaintiffs say KLLM

misclassified them and similarly situated truck drivers as independent contractors when, under

Mississippi law and the FLSA, they were employees entitled to payment of the federal minimum

wage.

Plaintiffs Lilly, Shettles, and McGee filed the lead case against KLLM on June 21, 2017;

Jowers filed the member case on June 28, 2017.  Plaintiffs seek relief for themselves and on

behalf of similarly situated KLLM drivers under 29 U.S.C. § 216(b).  The cases were

consolidated for purposes of discovery on March 29, 2018, and the parties engaged in discovery

limited to the issue of § 216(b) certification.  Now that the initial phase of discovery is closed,

Plaintiffs seek conditional certification of a class of "all individual persons and/or entities who

entered into [ICAs] and Tractor Lease/Purchase Agreements with KLLM."  Pls.' Mem. [195-1]

at 4.

II.     Analysis

Section 216(b) of the FLSA provides:

> Any employer who violates the provisions of [the FLSA] shall be liable to the
> employee or employees affected in the amount of their unpaid minimum wages
> . . . . Any action to recover the liability prescribed in [this section] may be
> maintained against any employer . . . in any Federal or State court of competent
> jurisdiction by any one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.  No employee shall be a party
> plaintiff to any such action unless he gives his consent in writing to become such
> a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  "Thus, the FLSA allows an employee to bring a claim on behalf of other

similarly[ ]situated employees, but the other employees do not become plaintiffs in the action

---

[2] The Court dismissed the claims of Plaintiff Harry Swales, the first-named plaintiff in the lead
case, on August 31, 2018.  Order [125].

unless and until they consent in writing." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008).

Few areas of the law are less settled than the test for determining whether a collective action should be certified under § 216(b). Within the Fifth Circuit, district courts routinely follow the two-step approach adopted in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987):

> First, the plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action. Second, once discovery is complete and the employer moves to decertify the collective action, the court must make a factual determination as to whether there are similarly[ ]situated employees who have opted in. If so, the collective action may proceed, and if not, the court must dismiss the opt-in employees, leaving only the named plaintiff's original claims.

*Sandoz*, 553 F.3d at 915 n.2 (citations omitted).

At the first step of this test, courts typically apply a "fairly lenient standard" for deciding whether to conditionally certify a collective action. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Certification is proper when the plaintiff raises "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1214 n.8. And when that is so, "[d]istrict courts have discretion in determining whether to order court-supervised notice to prospective plaintiffs." *Harris v. Hinds Cty.*, No. 3:12-CV-542-CWR-LRA, 2014 WL 457913, at *1 (S.D. Miss. Feb. 4, 2014) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

But the Fifth Circuit Court of Appeals "has carefully avoided adopting" the *Lusardi* method. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 n.9 (5th Cir. 2019). As it noted in one case, the test "by its nature, does not give a recognizable form to an [FLSA] representative class, but lends itself to *ad hoc* analysis on a case-by-case basis." *Mooney*, 54 F.3d at 1213. Yet

despite these misgivings, the Fifth Circuit has neither rejected the *Lusardi* approach nor offered an alternative.

The question is even more complicated when—as here—some but not all discovery has occurred.  The first step of the *Lusardi* approach typically happens before discovery.  *See Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (explaining that, at notice stage, "little, if any, discovery has taken place").  So according to KLLM, the Court should instead apply "a more stringent standard" because "substantial discovery has already been conducted."  Def.'s Mem. [210] at 9.  More specifically, KLLM cites the standards one district court applied at the second decertification step.  Def.'s Mem. [210] at 13 & n.23 (citing *Gatewood v. Koch Foods of Miss., LLC*, No. 3:07-CV-82-KS-MTP, 2009 WL 8642001, at *13 (S.D. Miss. Oct. 20, 2009)).

Courts addressing conditional certification based on similar discovery have taken different approaches.  Some simply collapse the two steps of the collective-action process, as KLLM seems to propose.  *See Harris v. Fee Transp. Servs., Inc.*, No. 3:05-CV-77-P, 2006 WL 1994586, at *3 (N.D. Tex. May 15, 2006) ("[W]here the parties have had the opportunity to conduct discovery on the issue of certification, the similarly situated inquiry is more stringent.  Courts generally consider the evidence submitted and the two-step inquiry collapses into one." (citation omitted)).  Under this approach, the three factors typically considered at the decertification stage come into play:  "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations."  *Id*.

Other courts have applied a "heightened standard" to conditional certification after discovery by requiring the plaintiff "to produce evidentiary support beyond the bare allegations

4

contained in [the] complaint and personal declaration." *Valcho v. Dall. Cty. Hosp. Dist.*, 574 F. Supp. 2d 618, 622 (N.D. Tex. 2008).  Those courts have explained that when discovery has taken place, "the standard for certification at the notice stage will appropriately be less lenient," but it remains less "onerous [than the] standard that applies at the second, decertification stage." *Clay v. Huntington Ingalls Inc.*, No. 09-7625, 2011 WL 13205917, at *3 (E.D. La. Sept. 29, 2011).

These courts note that the more demanding standard utilized at the decertification stage is not appropriate at this stage because "[t]hat standard is only appropriate after discovery is largely complete and the case is ready for trial." *Id.* (citing *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010)); *accord West v. Lowes Homes Ctrs., Inc.*, No. 6:09-1310, 2010 WL 5582941, at *6 (W.D. La. Dec. 16, 2010) (refusing to proceed to second stage of *Lusardi* analysis where some discovery was conducted, but applying "the more lenient 'notice stage' standard" while "consider[ing] all the depositions, affidavits, and documents of record in deciding whether the first-stage requirements are met"), *R. & R. adopted sub nom. West v. Lowes Home Ctrs., Inc.*, 2011 WL 126908 (W.D. La. Jan. 14, 2011); *see also Thiessen v. Gen. Elec. Capital Corp.*, 996 F. Supp. 1071, 1081 (D. Kan. 1998) (explaining that, although 30 individuals had filed opt-in notices and the parties engaged in three months of discovery, court would not apply "the 'higher' standard typically used at the post-discovery stage" in considering conditional-certification motion).

The Court agrees with the latter approach but not for all the same reasons.  To begin, discovery is not complete, and this case is not "ready for trial," which is the normal point at which the decertification standards apply.  *Mooney*, 54 F.3d at 1214.  More substantively, we do not know how many drivers will opt in or the extent to which their claims might make a collective action viable.  The step-two considerations KLLM urges the Court to apply necessarily

consider the scope and nature of the opt-in claims.  For example, a collective action with 10 drivers might present fewer disparate facts and more readily satisfy "fairness and procedural concerns," whereas a collective action involving thousands may require a different analysis. *Harris*, 2006 WL 1994586, at *3 (listing step-two factors); *see also Mooney*, 54 F.3d at 1213 (noting that similarity is a fact question under *Lusardi* that "lends itself to *ad hoc* analysis on a case-by-case basis").

Thus, the Court will not jump to the second *Lusardi* step before identification of the opt-in claimants.  It will instead require "more than minimal evidence" of the notice-stage requirements.  *Parker v. Silverleaf Resorts, Inc.*, No. 3:14-CV-2075-B, 2017 WL 1550522, at *8 (N.D. Tex. May 1, 2017).[3]

As to the requirements for conditional certification, Plaintiffs must show (1) "that aggrieved individuals exist," (2) who "are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted," and (3) "that those individuals want to opt in to the lawsuit." *Hinds Cty.*, 2014 WL 457913, at *2.  Here, the record adequately shows that aggrieved individuals exist and that there are others who have opted in.[4]

---

[3] Even assuming the Court should skip step one as KLLM suggests, there is no clear guidance on the standards that apply at decertification.  KLLM bases its argument on an unpublished district-court case discussing decertification.  But in *Tyson Foods, Inc. v. Bouaphakeo*, the parties agreed that "the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure."  136 S. Ct. 1036, 1045 (2016).  The Supreme Court "assume[d], without deciding, that this is correct."  *Id.*  At some point, this Court will need more guidance from the parties on the proper standards for ultimately certifying a collective action.

[4] That some individuals feel aggrieved does not mean they will ultimately prevail.  Nothing in this Order suggests—or should be construed as suggesting—that the Court has any opinion on the potential merits of these claims.  *See Hoffmann-La Roche Inc.*, 493 U.S. at 174 (holding that courts engaged in notice process "must be scrupulous to respect judicial neutrality" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action"); *see also In re JPMorgan Chase*, 916 F.3d at 503–04 (holding that district court in FLSA case erred

Turning to similitude, some courts say the named plaintiffs and the potential opt-in plaintiffs "'need not be identical, but similar,' with respect to their 'job requirements and with regard to their pay provisions.'"  *Eberline v. Media Net LLC*, No. 1:13-CV-100-LG-JMR, 2013 WL 11609929, at *2 (S.D. Miss. Oct. 24, 2013) (quoting *Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-CV-776-D, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2004)).

On these metrics, Plaintiffs have minimally shown the existence of similarly situated aggrieved individuals "given the claims and defenses asserted."  *Hinds Cty.*, 2014 WL 457913, at *2.  All four named plaintiffs, and the four individuals who opted-in, drove trucks for KLLM under a version of KLLM's ICA.  All were paid per mile according to the appendices to the ICA. All leased their trucks from KLLM under a Tractor Lease/Purchase Agreement, and they then leased the trucks back to KLLM under the terms of the ICA.  All were classified as independent contractors and thus exempt from FLSA.  Yet there is evidence suggesting common policies and practices that impacted their independence.

That is not to say there were no differences.  For example, over-the-road and regional drivers had different per-mile compensation rates.  There were also differences and individualized facts regarding the hours the drivers worked.  But again, pay was determined based on similar methods utilizing the same ICA appendices; the same business model existed for the drivers; and the job responsibilities were substantially the same.  *See Mooney*, 54 F.3d at 1214 & n.8 (noting that certification may be proper if pay is based on a "single decision, policy, or plan").[5]

---

by suggesting during conditional-certification hearing that employer engaged in illegal employment practices).

[5] KLLM says the individual pay histories demonstrate the lack of similarity, but it also notes that there are no available records for much of this time.  Def.'s Mem. [210] at 36.  The Supreme Court faced a similar issue in *Tyson Foods*, where the plaintiffs claimed that they did not receive

Finally, as to step one, the claims and defenses largely turn on the same questions, like whether the drivers were misclassified as independent contractors. *See Hinds Cty.*, 2014 WL 457913, at *2 (considering similarity relevant to claims and defenses). Whether the drivers were misclassified is based on the economic-realities test, which uses "five non-exhaustive factors" to determine "whether the alleged employees, as a matter of 'economic reality,' are 'economically dependent' on the business to which they supply their labor and services." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (citing *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008)). As stated above, the Court may not reach the merits of this issue at the pre-notice stage. *Hoffmann-La Roche Inc.*, 493 U.S. at 174. But KLLM says the differing facts each Plaintiff will ultimately present under the economic-realities test is enough to deny conditional certification. Def.'s Mem. [210] at 21. KLLM may ultimately have a point. But this case is at the pre-notice stage, and as stated, we do not yet know how many drivers will opt in or how similar their claims may be.

In sum, Plaintiffs have provided evidence that they are "similarly situated to other [drivers] in terms of their relationship to Defendant, the skill required to perform their positions, the extent of their investments and Defendant's investments, and the degree to which their opportunity for profit and loss is determined by the alleged employer." *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 471 (S.D. Tex. 2012); *see* Pls.' Reply [211] at 9 (summarizing

---

overtime pay for time spent donning and doffing their protective gear. 136 S. Ct. at 1041. The defendant argued that "person-specific inquiries into individual work time predominate over the common questions raised by respondents' claims, making class certification improper." *Id.* at 1046. But because no time records existed, the plaintiffs used representative evidence to establish typical donning-and-doffing times. *Id.* The Supreme Court concluded—based on the facts presented—that the representative evidence could be used to show the predominance of common questions of law or fact. *Id.* at 1048–49. *Tyson* may prove distinguishable, but that too will be clearer when the opt-in plaintiffs have been identified.

Plaintiffs' declarations as showing "KLLM controlled the work provided, the instrument required to perform the work, and the amount paid for performance—and lease-operators were not able to seek loads elsewhere" such that "Plaintiffs and opt-ins were completely dependent on KLLM for their entire income"). Plaintiffs have established a basis for conditional certification under § 216(b).

That does not, however, mean the conditional class should be as broad as Plaintiffs want. KLLM correctly points out that Plaintiffs' request for conditional certification contains no temporal limitations. "[C]ourts within the Fifth Circuit have repeatedly recognized that 'based on the statute of limitations . . . class certification is appropriately limited to workers employed by the defendant up to three years before notice is *approved* by the court.'" *Perez v. City of New Orleans*, No. 12-2280, 2015 WL 4547505, at *1 (E.D. La. July 28, 2015) (quoting *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 654 (S.D. Tex. 2010)). Plaintiffs offer no response to this argument, and the Court agrees with KLLM that the class should be limited to those employed within three years of the date this Order is entered.

KLLM also asserts that any class should exclude drivers who first signed an ICA on or after September 25, 2017, because, as of that date, KLLM's master ICA was revised to include a waiver of the driver's right "to file, bring, join, consent to, or participate in any lawsuit or arbitration purporting to form, or seeking to form, a class, class action, collective action or mass action." Revised ICA [209-33] at 15. Again, Plaintiffs did not respond to the argument, and the Court agrees that the class should be so limited. *See In re JPMorgan Chase*, 916 F.3d at 502 (explaining that district court lacked discretion to send notice to potential opt-in plaintiffs who had valid arbitration agreements that would prevent their participation in collective action).

Finally, the parties disagree as to how much information about potential opt-ins KLLM should be required to provide Plaintiffs, with KLLM objecting to having to provide phone numbers, e-mail addresses, or social security numbers.  Def.'s Mem. [210] at 41–42.  Plaintiffs respond that they "are willing to address this issue" by "meet[ing] and confer[ring] . . . after conditional certification is granted."  Pls.' Reply [211] at 12.  In the event KLLM declines to petition for interlocutory appeal or the Fifth Circuit denies its petition, the parties should meet and confer about the procedure for notice and contact the chambers of United States Magistrate Judge F. Keith Ball to set a status conference to discuss the timing and logistics of notice and further discovery and to enter new case-management deadlines as appropriate.

III.    Interlocutory Appeal

The Court certifies this decision for interlocutory appeal.  To begin, this Order involves controlling questions of law as to which there is substantial ground for difference of opinion. *See* 28 U.S.C. § 1292(b).  As noted, there are open questions regarding the applicable standards, especially when some discovery has occurred.  *See In re JPMorgan Chase*, 916 F.3d at 500 n.9 (noting that court of appeals "has carefully avoided adopting the two-stage '*Lusardi*' method of certifying a collective action" but offering no alternative test).  And assuming the Court should have applied the ultimate standard for certification, that too is unclear.  Also, an immediate appeal may materially advance the ultimate termination of the litigation.  *See* 28 U.S.C. § 1292(b).  KLLM presented thoughtful arguments for denying certification under a more exacting standard.  If it is correct, the Court need not participate in the notice process, allow an opt-in period, oversee discovery as to possibly thousands of drivers' claims, and then face the certification issue again at the decertification stage.  Finally, applying a different test for conditional certification—or for the ultimate decision whether to certify—could materially

impact the trial of this matter; the case will either be a collective action or involve individual claims.  The case is therefore certified for interlocutory appeal and stayed until the appeal is concluded or the parties indicate that no appeal will be filed and request a status conference to plan the logistics of issuing notice.

IV.    Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For the foregoing reasons, Plaintiffs' Amended Motion for Conditional Certification [195] is granted.  The Court conditionally certifies the following class:

> Those individual persons and/or entities who entered into Independent Contractor Agreements and Tractor Lease/Purchase Agreements with KLLM Transport Services, LLC, at any time on or after September 24, 2016, but excluding any individual persons and/or entities who first executed Independent Contractor Agreements or Tractor Lease/Purchase Agreements with KLLM Transport Services, LLC, on or after September 25, 2017.

**SO ORDERED AND ADJUDGED** this the 24th day of September, 2019.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE